S. H. H. CLARK et al., as Receivers of the Union Pacific Railway Company, v. THE BOARD OF COMMISSIONERS OF WALLACE COUNTY et al.

1. GOPHER SCALPS, Bounties for—Void Statute. Chapter 87, Laws of 1871 (Gen. Stat. of 1889, ¶ 1890), entitled "An act to protect fruit trees, hedge plants, and fences," and providing in the body of the act for paying bounties for gopher scalps, is unconstitutional and void, the subject of the act not being clearly expressed in its title.

2. ———— Improper Submission of Question to Voters. Where a board of county commissioners has authority to submit to the voters of the county a proposition whether it shall levy for county purposes an additional tax to pay bounties upon the scalps of certain ani-

mals, which the statute makes provisions for the killing of, and in such proposition, without any authority of law, there is included the payment of a bounty for gopher scalps, such proposition, if carried, is without any force, as there is no way of separating the proposition into several ones, or to separate the good parts of the proposition from the bad one.

*Error from Wallace District Court.*

On the 11th day of December, 1893, S. H. H. Clark, Oliver W. Mink, E. Ellery Anderson, J. W. Doane and F. R. Coudert brought this action, as receivers of the Union Pacific Railway Company, to restrain the board of county commissioners and the treasurer of Wallace county from collecting a special or extra levy of 10 mills on the dollar's valuation of the Union Pacific property in that county, and to prevent the board from issuing warrants for payment of bounties on wolf, coyote, rabbit and gopher scalps. At that time a temporary injunction was granted. Afterward the defendants filed answer, to which plaintiffs replied. On the 19th day of April, 1894, the case was submitted to the court upon the pleadings and the following agreed statement of facts :

"The Union Pacific Railway Company is a corporation organized and existing under the laws of the United States, with a line of railroad and railroad property situate in the county of Wallace, Kansas, and taxable therein for the year 1893; that the value of its railroad and railroad property so situated in the county of Wallace, as assessed for taxation for the year 1893, was and is the sum of $922,006.75; and the total valuation of all the property in Wallace county, as assessed for taxation for the year 1893, was and is $1,336,000. The plaintiffs herein were duly appointed receivers, and at the time of bringing this suit were and are now in possession and charge of the railroad and railroad property of the Union Pacific Railway Company, invested with the powers and charged with the duties as alleged in the petition. On the 3d day of July, 1893, the defendant the board of county commissioners made an order placing a bounty of $1 each on the scalps of wolves and coyotes, and 5 cents each on the scalps of rabbits and gophers. A petition was presented to the board at a special meeting held July 29, 1893, asking that a special election be called and the question of authorizing

the board of county commissioners to make a special or additional levy by which sufficient funds could be raised to enable the county to pay a bounty upon gopher, rabbit, coyote and wolf scalps be submitted to a vote of the people of the county. The commissioners granted the petition, and ordered the sheriff to call the election for August 10, 1893. The board of county commissioners of Wallace county made a levy on August 7, 1893, of 10 mills on the dollar, of all the taxable property in said county, for current expenses for the year 1893, and at the same time made a levy of 3 mills for interest, and 1 mill for sinking fund on bonds outstanding against the county.

"The special election mentioned above was held August 10, 1893, and the following proposition was voted upon: 'Shall the county commissioners be authorized to make an additional levy of 10 mills, over and above what they are authorized by law to levy for county purposes, to meet the extra expense incurred by the bounties being placed on wolf, coyote, gopher and rabbit scalps?' A majority of 18 votes was cast in favor of the proposition. The board afterward met on the 11th day of August, 1893, and made the following order: 'The additional levy of 10 mills to pay for the bounty on scalps, as voted for at the special election, August 10, was ordered to be extended on the tax roll on all the taxable property throughout the county.' Said additional levy was then extended on the tax roll as ordered, and the tax roll was then placed in the hands of the defendant county treasurer for collection. The tax raised under the additional 10-mills levy is to be used only to pay the bounties before mentioned. At the time of bringing this suit the county treasurer had charge of the tax rolls, and would have collected the tax raised by the additional 10-mills levy had he not been restrained by the order of this court, and he will now collect said tax unless enjoined from so doing. After said bounties had been established by said board, and prior to the institution of this suit, the said board had issued, upon the proper making and presentation of proofs, a large number of warrants to a very large number of persons as payment for said bounties, and in amount about as follows: Wolf scalps, $100; coyote scalps, $400; gopher scalps, $3,-250; rabbit scalps, $3,250. The county commissioners will, unless enjoined by this court, issue other warrants in payment of bounties on the scalps of wolves, coyotes, rabbits,

and gophers. That the plaintiffs have paid all the taxes levied on the railroad and railroad property of the Union Pacific Railway Company after this suit was commenced, except the 10-mill tax authorized by vote. The plaintiffs do not attack the regularity of any of the proceedings of the board in placing the bounty on the animals mentioned, or in calling the election, or in making the additional levy. The only questions to be decided are, whether the board had a right, under the law, to make the orders and levies set out in this statement, or to issue the warrants mentioned herein."

Judgment was rendered dissolving the temporary injunction, and refusing the prayer of the petition for a perpetual injunction. From that judgment the plaintiffs appeal and bring the case here.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiffs in error:

The commissioners claim authority to pay a bounty on gopher scalps by virtue of chapter 87, Laws of 1871 (¶ 1890, Gen. Stat. of 1889); but that act is void, being in conflict with § 16, article 2, of the constitution. A mere glance at the act shows that the subject treated of is not clearly expressed in the title, or, to be accurate, is not expressed at all. Reading the title would not suggest gophers, or bounties for their scalps, or warn the reader that the passage of the act might entail 1 per cent. additional tax on all the property of the state. This clause of the constitution has been considered many times by this court, and while it may seem unnecessary to cite authorities, we call attention to a few of the cases where it has been held that certain acts were in violation of § 16, article 2. See *Comm'rs of Norton Co. v. Snow,* 45 Kas. 332; *In re Wood,* 34 id. 645; *M. K. & T. Rly. Co. v. Long,* 27 id. 684; *The State v. Barrett,* 27 id. 213; *Swayze v. Britton,* 17 id. 625; *Comm'rs of Sedgwick Co. v. Bailey,* 13 id. 600.

We claim that the order made by the commissioners on July 3, 1893, placing a bounty on scalps, was unlawful in whole, because it was one single act, and the illegality of the

gopher bounty invalidates the entire order. It is plainly seen that the gopher was the animal the commissioners were after, and the other animals mentioned would probably never have received attention from them if they had not started in with the intention of paying bounties on gopher scalps.

If the bounty on gopher scalps is not lawful, there was no authority of law for submitting the proposition asking the electors to give authority to make the levy desired. There is no way of separating the one proposition into several, or to determine what the result of the election would have been if the commissioners had not proposed a bounty upon gophers. If the commissioners had no authority to submit the proposition, the electors could not by their votes direct an increased levy, for the reason that an increased levy was only necessary to meet the expenses caused by the bounty, and that was the reason given by the commissioners for asking for authority to make the second levy.

*J. M. Sanders*, county attorney, and *Waters & Waters*, for defendants in error:

The title of an act may be as broad and comprehensive as the legislature may choose to make it. And it may be made narrow and limited. It may embrace the entire common law of England, . . . or it may only embrace the change of name of some private and obscure individual. See *Bowman v. Cockrill*, 6 Kas. 334. This court, in the case of *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.*, 26 Kas. 181, has given every interpretation and advanced all the argument we want here. The subject there under discussion was "An act concerning private corporations." This court there held that it was broad enough to comprise within a single chapter the whole law of private corporations. See page 198. On page 200 of that decision is a long list of authorities especially applicable here. See, also, *Division of Howard Co.*, 15 Kas. 208; Sedg. St. & Const. Law, 517. There is no more we could say or refer to than the foregoing decisions.

In the act under fire, it is comprehensive enough to cover

anything that will protect fruit trees, hedges, and fences, one thing just as much as another — to punish setting out of prairie fires, to prohibit stock from running at large; to punish malicious trespassing upon them; or anything else that depredates, injures, or destroys. It can just as fitly look to and have for its object the destruction of rodents, and, as a necessity, pay for their destruction. It is all germane and proper. When we say this we exhaust the subject.

The opinion of the court was delivered by

HORTON, C. J.: The board of commissioners of. Wallace county claims authority to pay a bounty on gopher scalps by virtue of the provisions of chapter 87, Laws of 1871 (Gen. Stat. of 1889, ¶ 1890). The title of the act is as follows: "An act to protect fruit trees, hedge plants, and fences." The act authorizes "the county commissioners of any county of this state to pay a premium for gopher scalps taken in their county, not to exceed 20 cents for each scalp." There is nothing in the body of the act referring to fruit trees, hedge plants, or fences. In support of the act, it may be urged that the killing or extermination of gophers may tend to protect fruit trees, hedge plants, and fences, but we do not think the subject of the act is clearly expressed in its title, as required by § 16, article 2, of the constitution. The title does not suggest gophers, or bounties for their scalps, or the levying of taxes to pay the same. The title is too general. It no more suggests gophers than it does prairie fires, or malicious trespassing; not, in fact, so much. If the title of the act referred to bounties for scalps of animals or rodents, although gophers were not named therein, a different question would be presented.

When the legislature, in 1889, passed an act authorizing a bounty upon wolf, coyote, wild cat, fox and rabbit scalps, these animals were named in the title of the act. (Laws of 1889, ch. 90.) The title of that act clearly expresses the subject thereof. The title of chapter 91, Laws of 1871, in the case of *Comm'rs of Marion Co. v. Winkley*, 29 Kas. 36,

referred to hedges, which was the subject of the act; therefore, the subject of the act was expressed in its title. (*Comm'rs of Sedgwick Co. v. Bailey*, 13 Kas. 600; *Swayze v. Britton*, 17 id. 625; *The State v. Barrett*, 27 id. 213; *M. K. & T. Rly. Co. v. Long*, 27 id. 684; *In re Wood*, 34 id. 645; *Comm'rs of Norton Co. v. Snow*, 45 id. 332.)

We therefore conclude that chapter 87, Laws of 1871, is void, as being in conflict with § 16, article 2, of the constitution. As chapter 87, Laws of 1871, is unconstitutional, the board of commissioners of Wallace county had no legal right to call a special election for August 10, 1893, asking for authority to make an additional tax levy to pay a bounty on gopher scalps. The proposition to incur extra expenses for bounties for gopher, rabbit and other scalps was submitted as an entire proposition. As a bounty on gopher scalps is not authorized by any constitutional statute, we cannot hold the proposition, which was submitted as an entire one, good for any purpose. There is no way of separating the good from the bad. The majority in favor of the proposition submitted was only 18. A part of these votes may have been induced because a bounty was proposed in the proposition voted upon for gopher scalps. There is no way of separating the one proposition into several, or to determine what the result of the election would have been if the commissioners had not proposed a bounty upon gophers. For the same reasons, the power of the commissioners to make the tax levy of August 11, 1893, must be void. As a logical result, the county commissioners had no power to issue warrants to pay bounties on the scalps of the animals named in the order of July 3, 1893.

The judgment of the district court will be reversed, and the case remanded, with direction to the district court to enter judgment upon the agreed statement of facts in favor of plaintiffs below.

All the Justices concurring.